**KELLEY DRYE & WARREN LLP**
Glenn T. Graham (State Bar No. 338995)
ggraham@kelleydrye.com
7 Giralda Farms, Suite 340
Madison, NJ 07940
Telephone: (973) 503-5917
Facsimile: (973) 503-5950

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUISE HUDIS, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation; QUINCY BIOSCIENCE, LLC, a limited company; PREVAGEN, INC., a corporation d/b/a SUGAR RIVER SUPPLEMENTS; QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.,<br><br>            Defendants. | Case No. 1:25-cv-01357-JLT-CDB<br><br>[Hon. Jennifer L. Thurston]<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Hearing Date: April 10, 2026<br>Time: 9:00 AM<br>Location: Courtroom 4 |

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

ARGUMENT .........................................................................................................................6

I.    The Court Should Dismiss the Amended Complaint for Failure to State a Claim .............6

    A.    Plaintiffs' CLRA, UCL, and FAL Theories Fail as a Matter of Law ......................6

        1.    Plaintiff Cannot Show Falsity Through Lack of Substantiation ................. 7

        2.    Plaintiff Cannot Show Falsity Through Clinical Evidence......................... 8

    B.    Plaintiff's "Pre-Suit" CLRA Notice Was Not Properly Served............................11

    C.    Plaintiffs' Song-Beverly Act Warranty Claims Fail as a Matter of Law...............12

    D.    Plaintiff's Derivative Unjust Enrichment Claim Should Be Dismissed ................13

    E.    Plaintiff's Shotgun-Pleading Fails To Plausibly Allege Wrongdoing By Any Particular Defendant ....................................................................................14

II.   The Court Should Dismiss the Amended Complaint as Against Defendant Mark Underwood for Lack of Personal Jurisdiction ...................................................................15

    A.    Underwood Is Not Subject to General Personal Jurisdiction.................................16

    B.    Underwood Is Not Subject to Specific Personal Jurisdiction ...............................17

        1.    Plaintiff Failed to Allege That Underwood Purposefully Directed Any Activities at California...................................................................... 17

        2.    Plaintiff Failed to Allege That Her Claim Arises Out of or Relates to Underwood's Alleged Forum-Related Activities ................................. 20

        3.    Exercising This Court's Jurisdiction Over Underwood Would Be Unreasonable......................................................................................... 21

CONCLUSION....................................................................................................................22

i

Case No. 1:25-cv-01357-JLT-CDB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aloudi v. Intramedic Rsch. Grp., LLC*,
    729 F. App'x 514 (9th Cir. 2017) ................................................................................10

*Aloudi v. Intramedic Rsch. Grp., LLC*,
    No. 3:15-cv-00882, 2015 WL 4148381 (N.D. Cal. July 9, 2015) ...........................10

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ...............................................................................13, 14

*Atkinson v. Elk Corp.*,
    109 Cal. App. 4th 739 (2003) ...................................................................................13

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ....................................................................................6

*Bradley v. T-Mobile US, Inc.*,
    No. 5:17-cv-07232, 2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) ........................18

*Brazil v. Dole Food Co., Inc.*,
    935 F. Supp. 2d 947 (N.D. Cal. Mar. 25, 2013) ......................................................13

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
    582 U.S. 255 (2017)..............................................................................................20, 21

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007)..................................................................11, 12

*Cullen v. Netflix, Inc.*,
    No. 5:11-cv-01199, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013 ................................6

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ......................................................................................6

*Delman v. J. Crew Grp., Inc.*,
    No. 2:16-cv-09219, 2017 WL 3048657 (C.D. Cal. May 15, 2017)....................17, 18

*Drake v. Toyota Motor Corp.*,
    No. 2:20-cv-01421, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) .........................15

*Engel v. Novex Biotech LLC*,
    No. 3:14-cv-03457, 2015 WL 846777 (N.D. Cal. Feb. 25, 2015).............................8

*Ewing v. Encor Solar, LLC*,
    No. 3:18-cv-02247, 2019 WL 277386 (S.D. Cal. Jan. 22, 2019) ...........................17

ii

*FDIC v. Brit.-Am. Ins. Co.*,
   828 F.2d 1439 (9th Cir. 1987) ............................................................................................21

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021).............................................................................................................20

*FTC v. Quincy Bioscience Holdings Co., Inc.*,
   No. 1:17-cv-00124, 2022 WL 2440421 (S.D.N.Y. July 5, 2022) ...................................18, 19

*Garcia v. Sanofi Pasteur Inc.*,
   617 F. Supp. 3d 1169 (E.D. Cal. 2022)..................................................................................6

*Garza v. Spectrum Brands Pet LLC*,
   760 F. Supp. 3d 1039 (E.D. Cal. 2024)..............................................................................6, 14

*Green v. Hepta Run, Inc.*,
   No. 2:19-cv-10522, 2020 WL 1638273 (C.D. Cal. Apr. 2, 2020)...........................................18

*Hernandez v. Johnson & Johnson Consumer Inc.*,
   No. 3:19-cv-15679, 2020 WL 2537633 (D.N.J. May 19, 2020)..............................................13

*Hiradate v. Ralphs Grocery Co.*,
   No. 2:22-cv-03593, 2022 WL 19299128 (C.D. Cal. Nov. 28, 2022) .......................................13

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..........................................................................................................16, 21

*Jones v. ConAgra Foods, Inc.*,
   912 F. Supp. 2d 889 (N.D. Cal. 2012) ...................................................................................13

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................................................6

*Keeton v. Hustler Mag., Inc.*,
   465 U.S. 770 (1984)...............................................................................................................17

*Kwan v. SanMedica Int'l, LLC*,
   No. 3:14-cv-03287, 2015 WL 848868 (N.D. Cal. Feb. 25, 2015)............................................7

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) .................................................................................................7

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) .................................................................................................9

*Lee v. Nature's Path Food, Inc.*,
   No. 3:23-cv-00751, 2023 WL 7434963 (S.D. Cal. Nov. 9, 2023).........................................12

iii

*Liou v. Organifi, LLC*,
  491 F. Supp. 3d 740 (S.D. Cal. 2020)................................................................8

*Massie v. General Motors Co.*,
  No. 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021) .......................................21

*Matus v. Premium Nutraceuticals, LLC*,
  715 F. App'x 662 (9th Cir. 2018) .......................................................................21

*McVicar v. Goodman Glob., Inc.*,
  1 F. Supp. 3d 1044 (C.D. Cal. 2014) ...................................................................14

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021). .............................................................................8

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009) .........................................................................12

*Murrow v. Quincy Bioscience Holding Co., Inc.*,
  No. 1:23-cv-14893, 2025 WL 446149 (N.D. Ill. Feb. 10, 2025) ..............................15, 19, 20

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
  107 Cal. App. 4th 1336 (2003) ........................................................................7, 8

*NuCal Foods, Inc. v. Quality Egg LLC*,
  887 F. Supp. 2d 977 (E.D. Cal. Aug. 15, 2012)........................................................18

*O'Brien v. HII Ins. Sols.*,
  No. 2:20-cv-02115, 2021 WL 1060398 (E.D. Cal. Mar. 19, 2021)........................................15

*Obillo v. i-Health Inc.*,
  No. 3:24-cv-02459, 2025 WL 844389 (N.D. Cal. Mar. 18, 2025) ..........................................8

*Ogden v. Bumble Bee Foods, LLC*,
  No. 5:12-cv-01828, 2014 WL 27527 (N.D. Cal. Jan. 2, 2014)...........................................13

*Outboard Marine Corp. v. Superior Ct.*,
  52 Cal. App. 3d 30 (1975) ...............................................................................11

*People v. N. Leasing Sys., Inc.*,
  193 A.D.3d 67 (1st Dep't 2021) .........................................................................9

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ....................................................................15, 16, 21

*Pizana v. SanMedica Int'l LLC*,
  No. 1:18-cv-00644, 2019 WL 4747947 (E.D. Cal. Sept. 30, 2019) .......................................12

iv

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

*Racies v. Quincy Bioscience, LLC*,
No. 3:15-cv-00292, 2015 WL 2398268 (N.D. Cal. May 19, 2015)..........................................8

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014) ..................................................................................................14

*Ryan v. Starco Brands, Inc.*,
No. 5:24-cv-00642, 2024 WL 5102651 (N.D. Cal. Apr. 19, 2024).........................................12

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ............................................................................................16, 17

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...................................................................................................14

*Swetala v. Quten Rsch. Inst., LLC*,
No. 1:24-cv-00620, 2025 WL 950627 (E.D. Cal. Mar. 28, 2025)...........................................14

*Tangiers Inv., L.P. v. Americhip Intern., Inc.*,
No. 3:11-cv-00339, 2011 WL 3299099 (S.D. Cal. Aug. 1, 2011)............................................18

*Tubbs v. AdvoCare Int'l, L.P.*,
785 F. App'x 396 (9th Cir. 2019) .........................................................................................7, 10

*Watson v. Crumbl LLC*,
736 F. Supp. 3d 827 (E.D. Cal. 2024).....................................................................................14

*Zakikhan v. Hyundai Motor Co.*,
No. 8:20-cv-01584, 2021 WL 4805454 (C.D. Cal. June 28, 2021)........................................15

**Statutes and Other Authorities**

Cal. Civ. Code § 1782.................................................................................................................11

Cal. Civ. Code § 1791.................................................................................................................13

Cal. Civ. Code § 1794.................................................................................................................13

Fed. R. Civ. P. 12(b)(2) ..............................................................................................................15

Acetaminophen, Food & Drug Admin. (2015),
https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/204767s000lbl.pdf
(last visited Feb. 9, 2026)..........................................................................................................9

Huizhen Chen et al.,
*Higher Dietary Vitamin D Intake Influences Brain and Mental Function in
Elderly Americans: A Cross-Sectional Analysis*, Front. In Nutrition, April
2025 (2025) ...............................................................................................................................10

v

M. Kyla Shea et al.,
  *Brain Vitamin D Forms, Cognitive Decline, and Neuropathology in
  Community-Dwelling Older Adults*, 19 J. Alzheimer's & Dementia 2389
  (2022)...................................................................................................................10

Shreeya S. Nayale et al.,
  *Vitamin D and Brain Health: An Observational and Mendelian
  Randomization Study*, 116 Am. J. of Clin. Nutrition 531 (2022) ............................................10

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., Quincy Bioscience Manufacturing, LLC (collectively, "Quincy"), and Mark Underwood (together with Quincy, "Defendants") move pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss Plaintiff Louise Hudis's ("Plaintiff") Amended Complaint (the "Amended Complaint" or "FAC") with prejudice for failure to state a claim upon which relief may be granted.  Defendant Mark Underwood also moves pursuant to Rule 12(b)(2) to dismiss the Amended Complaint as against him for lack of personal jurisdiction.

## **INTRODUCTION**

In this false advertising litigation, Plaintiff's Amended Complaint is heavy in legal conclusions but conspicuously lacking in the factual allegations necessary to support them. Throughout the 50 pages and 200 copy-and-paste paragraphs in her Amended Complaint, Plaintiff offers a number of theories for why she believes the dietary supplement Prevagen® cannot provide the advertised cognitive benefits.  On that subjective basis alone, Plaintiff brought a laundry list of statutory claims, including causes of action under the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (the "FAL"), the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"), and the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA").  But Plaintiff's false advertising claims each are undone by the same fatal flaw: the Amended Complaint fails to allege affirmative facts sufficient to support her causes of action.  Without the requisite factual bases to support her false advertising claims, Plaintiff's Amended Complaint fails as a matter of law and should be dismissed.

To be sure, Plaintiff alleges why she *believes* the years of research and the double-blinded, placebo-controlled study supporting Quincy's advertising are insufficient.  In fact, the majority of the Amended Complaint is dedicated to attacking the substantiation that Quincy has already put forward in other litigations filed by Plaintiff's counsel.  But Plaintiff's (or her counsel's) *beliefs* about the proffered substantiation is plainly insufficient.  As a private individual, Plaintiff cannot state a false advertising claim by challenging Quincy's substantiation,

1

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

nor can she allege that Prevagen "does not work" and shift the burden on Quincy to substantiate its statements. Rather, to state the claims pled here, Plaintiff must allege the existence of *facts*, through studies, scientific papers, or otherwise, that *plausibly suggest* the advertising is false. Rather than meeting her burden, Plaintiff simply concludes that apoaequorin and Vitamin D cannot provide cognitive benefits and works backwards from there. That is insufficient.

In addition, the Court need not reach the merits (or lack thereof) of Plaintiff's CLRA claim because she failed to satisfy its pre-suit notice requirements. Despite waiting over *two years* after her sole purchase before bringing her initial complaint, Plaintiff sent her pre-suit notice to an incorrect address and jumped the gun by bringing a CLRA claim for monetary damages *before* that notice was received. Thus, Plaintiff's belated attempt at *pre*-suit notice failed and was actually received one week *after* the Amended Complaint was filed.

Nor can Plaintiff's three derivative causes of action survive. Plaintiff's implied and express warranty causes of action, for instance, are brought under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.* (the "Song-Beverly Act"). But Plaintiff neglects to recognize that the statute expressly excludes consumables like Prevagen, so it necessarily cannot apply to her claims as a matter of law. And while Plaintiff brings a cause of action for unjust enrichment—which is not a cognizable claim but instead a request for restitution—that too fails because she does not plead that she lacks a legal remedy.

Plaintiff's claims against Underwood independently fail for lack of personal jurisdiction. To establish personal jurisdiction over Underwood, Plaintiff had to allege that Underwood had the necessary minimum contacts with California that were connected to her claims and the litigation. Here, however, Plaintiff alleges no facts demonstrating that Underwood directed *any* conduct toward California, let alone conduct connected to Plaintiff's claims. In fact, Plaintiff fails to allege *any* specific action taken by Underwood whatsoever. Instead, Plaintiff attempts to reverse-engineer jurisdiction by taking Quincy's corporate actions and tacking on conclusory prefaces that Underwood, as its President, must have "directed" or "controlled" it. But to establish personal jurisdiction over Underwood, Plaintiff was required to come forward with the

2

necessary *minimum contacts* to satisfy Due Process, not tag-along contacts. Because Plaintiff failed to allege any facts evincing that Underwood was personally involved with the facts giving rise to her claims, her attempt to confer personal jurisdiction fails.

To survive a motion to dismiss, Plaintiff was required to come forward with facts that, if taken as true, would state a claim for relief. But when the Court ignores the subjective conclusions, conjecture, and misstatements from the Amended Complaint, as it is obligated to do, it is apparent that Plaintiff cannot state a claim under *Iqbal/Twombly*, much less satisfy Rule 9(b)'s heightened pleading standard. Plaintiff's Amended Complaint fails as a matter of law and should be dismissed with prejudice in its entirety.

## STATEMENT OF FACTS

Quincy is a biotechnology company that manufactures, distributes, markets, and sells a line of dietary supplements under the brand name "Prevagen®." (FAC ¶ 2.) One of the primary active ingredients in Prevagen—apoaequorin—is a calcium-binding protein derived from a protein, *aequorea victoria*, found in jellyfish. (*Id.* ¶¶ 31–32.) Quincy has conducted multiple studies on both Prevagen and apoaequorin, including *in vitro*, animal, and human clinical studies, which, taken together, show that Prevagen is safe for humans, improves memory, and provides cognitive benefits to healthy, community dwelling adults. (*See id.* ¶ 62; Daniel L. Moran et al., *Effects of a Supplement Containing Apoaequorin on Verbal Learning in Older Adults in the Community*, 30 Advances in Mind-Body Med. 4, 11 nn. 30–33 (2016) (the "MMS") (collecting some of these studies).)[1] In addition to apoaequorin, each Prevagen capsule also contains 50 micrograms of Vitamin D. (*See* FAC ¶ 76.)

The marketing statements challenged in the Amended Complaint—that Prevagen "improves memory," supports "health brain function," and was "clinically tested"—are substantiated by the MMS, a randomized, double-blind placebo-controlled human clinical trial. (*See* MMS at 4.) The MMS involved 218 adults aged 40 to 91, who were randomly assigned to

---

[1] While Plaintiff purports to attach the MMS as Exhibit 6 (FAC ¶ 62), no exhibits are attached to the Amended Complaint. The referenced document is attached to the Graham Declaration as Exhibit A.

3

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

receive either an apoaequorin capsule or a placebo.  (*Id.*)  The MMS showed that apoaequorin had a "statistically significant effect" on cognition and memory in a subgroup of participants of community dwelling adults with "little or no self-reported" cognitive impairment.  (*Id.* at 10.)  Accordingly, the MMS concluded, among other things, that "daily use of an oral apoaequorin-containing supplement or capsule had a statistically significant effect on verbal learning in a population of older individuals with little or no self-reported cognitive impairment."  (*Id.*)

The progression of data from *in vitro* and animal studies that preceded the MMS provide further support for Prevagen's advertised benefits.  (*E.g.,* FAC ¶¶ 114, 181.)  Additionally, as part of a nationwide class action settlement, all Prevagen packaging from 2020 to 2024 has included a statement that the marketing is "[b]ased on a clinical study of subgroups of individuals who were cognitively normal or mildly impaired."  (*Id.* ¶¶ 76; 82 n.13.)

In 2024, the Federal Trade Commission ("FTC") and New York Attorney General ("NYAG"), *see FTC v. Quincy Bioscience Holdings Co., Inc.*, No. 1:17-cv-00124 (S.D.N.Y.) (the "FTC/NYAG Action"),[2] tried claims that the NYAG brought pursuant to New York Executive Law Section 63(12), a statute exclusively reserved for the NYAG, and New York General Business Law ("GBL") Sections 349 and 350 to a jury based on the following eight marketing statements: "Prevagen improves memory," "Prevagen is clinically shown to improve memory," "Prevagen improves memory within 90 days," "Prevagen is clinically shown to improve memory within 90 days," "Prevagen reduces memory problems associated with aging," "Prevagen is clinically shown to reduce memory problems associated with aging," "Prevagen provides other

---

[2]     While Plaintiff relies heavily on the FTC/NYAG Action, she misstates at least two key aspects of that litigation.  First, footnote 1 states "Defendant Underwood is also a named defendant in the FTC's case and presently the plan is for a bench trial to take place on these claims in the future."  (FAC ¶ 7 n.1.)  This is false, and it was false when Plaintiff initiated this action on October 13, 2025.  Final judgment was entered in the FTC/NYAG Action in November 2024 and clarified in December 2024.  (Graham Decl. Ex. B.)  Second, Plaintiff alleges that "although the jury in the New York Attorney General's lawsuit were instructed that the [*sic*] Mr. Underwood was not a defendant in the State of New York's lawsuit, the evidence was so persuasive against Defendant Underwood that the jury found that he acted in concert with the Quincy Corporate Defendants and thus they found that he too had engaged in consumer fraud." (FAC ¶ 199.)  There is no factual support for this wildly speculative allegation.  In fact, the NYAG's claims against Underwood were dismissed for lack of personal jurisdiction and his name was later stricken from the jury verdict sheet. (Graham Decl. Ex. C.)

4

cognitive benefits, including but not limited to healthy brain function, a sharper mind, and clearer thinking," and "Prevagen is clinically shown to provide other cognitive benefits, including but not limited to healthy brain function a sharper mind, and clearer thinking." (Graham Decl. Ex. B at 1–2.)  As alleged in the Amended Complaint, the jury found that only two of the eight challenged statements, "Prevagen reduces memory problems associated with aging" and "Prevagen is clinically shown to reduce memory problems associated with aging," were materially misleading and thus violated GBL Sections 349 and 350.  (*Id.* at 2; FAC ¶ 89 n.14.).  The jury found that the remaining marketing statements were not materially misleading.

Plaintiff, a Bakersfield resident, alleges that she was "exposed to and saw Defendant's brain function and memory representations by first hearing about them from television ads she saw on TV."  (FAC ¶ 191.)  She further alleges that, in reliance on the TV ads, she "went to the Amazon web site" and after "seeing the front of the Prevagen label prominently displayed, . . . purchased her first and only bottle of Prevagen capsules."  (*Id.*)  Plaintiff avers that she purchased her only bottle of Prevagen on or about August 6, 2023 for $37.95.  (*Id.*)  Claiming that the product "did not and could [not] provide the represented brain health benefits" (*id.*), Plaintiff initiated the present lawsuit on October 13, 2025.  (Dkt. 1.)

Despite the two-year gap between purchasing Prevagen and filing the complaint, Plaintiff did not seek a refund directly from Defendants nor did she send Defendants any pre-suit notice required under the CLRA.  Instead, she alleged in the complaint that she would serve the requisite notice letter "contemporaneous[ly] with the filing of th[e] complaint."  (Dkt. 1 ¶ 200 n.23.)  Thirty days later, on November 13, 2025, Plaintiff filed the Amended Complaint which raised monetary claims under the CLRA and the Song-Beverly Act.  (*See* FAC ¶¶ 251–85.)  But Plaintiff never sent Defendants the pre-suit notice; rather, her counsel confirmed via letter that they had used an outdated address, resulting in the letter being returned to them on November 20, 2025.  (Graham Decl. Ex. D.)  Upon locating the correct address, Plaintiff then re-served the CLRA notice that same day, but the Amended Complaint had already been filed.  (*Id.*)

5

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### ARGUMENT

**I.    The Court Should Dismiss the Amended Complaint for Failure to State a Claim**

Under Rule 12(b)(6), "[d]ismissal is appropriate if the plaintiff has not allege[d] enough facts to 'state a claim to relief that is plausible on its face.'" *Becerra v. Dr Pepper/Seven Up, Inc.,* 945 F.3d 1225, 1228 (9th Cir. 2019*)* (quoting *Turner v. City & Cnty. of S.F.,* 788 F.3d 1206, 1210 (9th Cir. 2015)).  Although a court should accept well-pleaded facts as true, it need not "assume the truth of legal conclusions cast in the form of factual allegations." *Garcia v. Sanofi Pasteur Inc.*, 617 F. Supp. 3d 1169, 1171 (E.D. Cal. 2022) (citing *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986)).  The Court also is not required to "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Moreover, Plaintiff's pleading burden is stronger than as set forth Rule 8(a) because her UCL, FAL, and CLRA claims are "grounded in fraud."  Thus, Plaintiff was obligated to satisfy the heightened pleading standard under Rule 9(b).  *Cullen v. Netflix, Inc.*, No. 5:11-cv-01199, 2013 WL 140103, at *6 (N.D. Cal. Jan. 10, 2013), *aff'd,* 600 F. App'x 508 (9th Cir. 2015).  California courts routinely apply "[t]he heightened pleading standard of Federal Rule of Civil Procedure 9(b) [] to all UCL, FAL, or CLRA claims that are grounded in fraud." *Id.*  Indeed, Plaintiff characterizes her claims as grounded in "consumer fraud."  (*E.g.,* FAC ¶¶ 74 n.8, 199, 259.)  Accordingly, Plaintiff must "state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

**A.    Plaintiffs' CLRA, UCL, and FAL Theories All Fail as a Matter of Law**

Plaintiff's consumer fraud claims fail as a matter of law.  To state a claim under the "CLRA, UCL, and FAL, [P]laintiff must show that reasonable consumers are likely to be deceived by the label." *Garza v. Spectrum Brands Pet LLC*, 760 F. Supp. 3d 1039, 1047 (E.D. Cal. 2024) (Thurston, J.).  To do so, Plaintiff must allege the existence of evidence sufficient to

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

"show potential deception of consumers acting reasonably in the circumstances." *Tubbs v. AdvoCare Int'l, L.P.*, 785 F. App'x 396, 396 (9th Cir. 2019) (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011)).  Rather than alleging facts affirmatively showing that Quincy's statements are false or misleading, however, Plaintiff spends her Amended Complaint attacking the MMS and raising what amounts to an improper substantiation challenge.  That does not suffice to state an actionable claim.

### 1.    Plaintiff Cannot Show Falsity Through Lack of Substantiation

In the Amended Complaint, Plaintiff attacks the sufficiency and reliability of the MMS—a randomized, double-blinded, clinical trial—in an apparent attempt to show that it "should not and cannot have been relied upon by Defendants to claim that it support [*sic*] their brain health representations."  (FAC ¶ 160.)  Indeed, Plaintiff expressly challenges Quincy's substantiation throughout the Amended Complaint, even though she alleges that Quincy was "representing to consumers that credible scientific evidence existed which supported Defendant's claim that the product provided brain function and memory benefits."  (*Id.* ¶ 114.)  But "California law does not provide for a private cause of action to enforce the substantiation requirements of California's unfair competition and consumer protection laws." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1091 (9th Cir. 2017); *see also Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) ("Private plaintiffs are not authorized to demand substantiation for advertising claims.").  To the extent Plaintiff's falsity claims are based on the purported lack of substantiation, they necessarily fail.

Plaintiff's attempt to disguise her improper substantiation challenge by referencing the "clinically tested" language fares no better.  (FAC ¶¶ 112–16.)  California case law is clear that a complaint may not "end run around the bar against private substantiation claims by simply alleging that an advertiser's reference to the substantiation itself is misleading." *Kwan v. SanMedica Int'l, LLC*, No. 3:14-cv-03287, 2015 WL 848868, at *7 (N.D. Cal. Feb. 25, 2015), *aff'd*, 854 F.3d 1088 (9th Cir. 2017).  Indeed, the Northern District of California squarely rejected a challenge brought against the precise "clinically tested" statement on Prevagen labels

7

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

that Plaintiff challenges here, dismissing those claims because the challenge was "based on a lack of substantiation of those Product representations." *Racies v. Quincy Bioscience, LLC*, No. 3:15-cv-00292, 2015 WL 2398268, at *3 (N.D. Cal. May 19, 2015). In other words, merely alleging that the MMS was flawed is not sufficient to state a false advertising claim. Rather, "[i]f Plaintiff wishes to bring claims alleging that Defendants' advertisements are false or misleading, then [s]he must do so based on actual facts showing this, not simply an assertion that Defendants' substantiation is inadequate." *Engel v. Novex Biotech LLC*, No. 3:14-cv-03457, 2015 WL 846777, at *6 (N.D. Cal. Feb. 25, 2015), *aff'd*, 689 F. App'x 510 (9th Cir. 2017).

### 2.    Plaintiff Cannot Show Falsity Through Clinical Evidence

Outside of challenging the MMS, Plaintiff's Amended Complaint fails to allege the existence of *any* facts that, if taken as true, would show that Quincy's labeling statements are false or misleading. To meet her burden under the FAL, CLRA, and UCL, Plaintiff must allege facts showing that the statement has "actually been disproved," which requires "the plaintiff [to] point to evidence that directly conflicts with the claim." *Liou v. Organifi, LLC*, 491 F. Supp. 3d 740, 750 (S.D. Cal. 2020). There is no set form of evidence, and a plaintiff may establish falsity "by testing, scientific literature, or anecdotal evidence." *King Bio*, 107 Cal. App. 4th at 1348.

But therein lies the problem for Plaintiff, as her Amended Complaint points to no affirmative evidence whatsoever. Plaintiff does not allege the existence of any studies showing that Prevagen does not improve memory. In fact, she does not allege the existence of any scientific literature that supports her contentions. "Nor does Plaintiff cite evidence, such as actual testing or other studies yielding contrary results, to allege that the results of the underlying study were disproved or refuted." *Obillo v. i-Health Inc.*, No. 3:24-cv-02459, 2025 WL 844389, at *6 (N.D. Cal. Mar. 18, 2025). And Plaintiff's misplaced reliance on the jury findings in the FTC/NYAG Action further disproves her allegations. "Under the consumer protection laws of California [and] New York, . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021). In the FTC/NYAG Action, the jury

8

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

specifically found that six of the eight challenged advertising statements—all of which Plaintiff challenges here—are not "materially misleading," meaning those statements are not violative of California law, which utilizes the same "reasonable consumer" standard as the New York GBL statutes applied in that action.[3]  (Graham Decl. Ex. B at 2.)  As such, not only did Plaintiff fail to allege evidence showing that Quincy's advertising would mislead a reasonable consumer, but the facts upon which she did rely show that the statements are not misleading.

Instead of challenging Quincy's statements directly, Plaintiff throws a number of theories at the proverbial wall in an attempt to find one that sticks.  For instance, Plaintiff points to an FDA letter in which Quincy allegedly informed the FDA that apoaequorin is digested in the stomach and thus is not allergenic.  (*See* FAC ¶¶ 67–73.)  Plaintiff further argues that even if undigested, apoaequorin (an ingredient in Prevagen) cannot pass through the blood-brain barrier.  (*Id.* ¶ 87.)  But these allegations are irrelevant: Quincy has never claimed that apoaequorin passes through the blood-brain barrier to work, nor did Plaintiff point to any evidence showing that the blood-brain barrier is the only mechanism of action through which Prevagen can function.  She further did not allege that she reviewed and relied upon any statements made by Quincy that apoaequorin passes through the blood brain barrier. Nor is a known mechanism of action even required.  To the contrary, an unknown mechanism of action does not mean that a product does not work, and the FDA does not require a known mechanism of action for dietary supplements or even drugs. *See, e.g.*, *Acetaminophen*, Food & Drug Admin. 13 (2015), https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/204767s000lbl.pdf (last visited Feb. 9, 2026) ("The precise mechanism of the analgesic and antipyretic properties of acetaminophen is not established . . . .").

---

[3]     While the jury also found that the advertising statements had a tendency to deceive under New York Executive Law Section 63(12)—which does not contain a private right of action—the jury's findings with respect to that statute were based (incorrectly) on the viewpoint of an "ignorant consumer," not a reasonable one. *People v. N. Leasing Sys., Inc.*, 193 A.D.3d 67, 75 (1st Dep't 2021).  California courts have expressly rejected the "least sophisticated consumer" test. *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 512–13 (2003).  That finding is thus irrelevant in this action.

9

Instead of offering any facts that can plausibly establish that Prevagen did not work as advertised, Plaintiff simply concludes that "the product did nothing for her in any way." (FAC ¶ 191.) But even that anecdotal allegation is missing essential facts required to evaluate her claim, including how long she took Prevagen, how many capsules she took, whether she took the product as directed, or any other indicia that Prevagen did not improve her cognitive function. *See Aloudi v. Intramedic Rsch. Grp., LLC*, 729 F. App'x 514, 517 (9th Cir. 2017) ("[E]ven if the failure to produce weight loss in one individual were sufficient to show the actual falsity of the representation, Aloudi has not pleaded sufficient plausible and specific factual allegations to support his claim."). Not only is Plaintiff's self-serving assertion that she experienced no cognitive effects functionally impossible to measure, it also "is not described with the specificity required by Rule 9(b); more must be said to state a claim than 'the product did not work.'" *Aloudi v. Intramedic Rsch. Grp., LLC*, No. 3:15-cv-00882, 2015 WL 4148381, at *5 (N.D. Cal. July 9, 2015). As such, "Plaintiff['s] anecdotal evidence, standing alone, is insufficient to create an inference of falsity." *Tubbs*, 785 F. App'x at 396.

Plaintiff's anecdotal allegations are particularly suspect because she fails to consider the role of Vitamin D in improving cognitive function. As the labels Plaintiff included in the Amended Complaint show, each capsule of Prevagen sold during the class period contains a second active ingredient in addition to apoaequorin: 50 micrograms of Vitamin D. (FAC ¶ 76.) Vitamin D's positive effect on cognition and brain health is well-established. *See, e.g.*, Shreeya S. Nayale et al., *Vitamin D and Brain Health: An Observational and Mendelian Randomization Study*, 116 Am. J. of Clin. Nutrition 531, 538 (2022); M. Kyla Shea et al., *Brain Vitamin D Forms, Cognitive Decline, and Neuropathology in Community-Dwelling Older Adults*, 19 J. Alzheimer's & Dementia 2389, 2395 (2022); Huizhen Chen et al., *Higher Dietary Vitamin D Intake Influences Brain and Mental Function in Elderly Americans: A Cross-Sectional Analysis*, Front. In Nutrition, April 2025, at *1, 7 (2025). Here, however, Plaintiff offers no allegations concerning Vitamin D whatsoever, so she necessarily failed to show that any claims relating to Prevagen's efficacy are false. Plaintiff's claims therefore fail as a matter of law.

10

### B.    Plaintiff's "Pre-Suit" CLRA Notice Was Not Properly Served

In addition to failing on the merits, Plaintiff's CLRA claim failed to comply with the statute's strict notice requirements.  Under the CLRA, a plaintiff must "by certified or registered mail, return receipt requested," send a written notice to the defendant, "[t]hirty days or more prior to *the commencement* of an action for damages."  Cal. Civ. Code § 1782(a) (emphasis added).  "The CLRA's notice requirement is not jurisdictional, but compliance with this requirement is necessary to state a claim."  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007).  Indeed, California courts require "a literal application of the notice provisions," recognizing that strict compliance furthers the legislature's intent to promote early settlements.  *See Outboard Marine Corp. v. Superior Ct.*, 52 Cal. App. 3d 30, 41 (1975).

Here, Plaintiff's sue-first-ask-questions-later approach to litigation upended this process entirely.  Before even attempting to provide pre-suit notice, Plaintiff filed her class action complaint on October 13, 2025.  (Dkt. 1.)  In accordance with Cal. Civ. Code § 1782(d), the initial complaint only raised injunctive relief under the CLRA and alleged that she would serve her CLRA letter contemporaneously with her filing.  (*Id.* ¶ 200 n.23.)  Thirty days later, Plaintiff filed the Amended Complaint to seek monetary damages under the CLRA for the first time.  (FAC ¶ 259.)  But Plaintiff failed to send the pre-suit letter to Quincy before filing: as her counsel confirmed in a letter dated November 20, 2025, Plaintiff inadvertently sent the letter to an outdated address, which was later returned and marked "Return to Sender–Unclaimed–Unable to Forward."  (Graham Decl. Ex. D.)  Upon finding the correct address,[4] Plaintiff attempted to resend the Notice Letter that same day but, by that time, the Amended Complaint had already been filed.  (*Id.*)  In other words, Plaintiff did not serve Quincy with "pre-suit" notice; she served "post-suit" notice one week *after* she amended her CLRA claim to seek monetary damages.

Plaintiff's failure to comply with the CLRA pre-suit notice requirement warrants dismissal of her monetary CLRA claim.  Where a plaintiff fails to provide the requisite pre-suit

---

[4]    It is prominently posted on Quincy's website, https://quincybioscience.com/.

11

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

notice before improperly bringing monetary CLRA claims, "the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirement." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1261 (2009). Had Plaintiff timely provided Quincy with notice, the company could have made an effort to address her concerns, including by offering her a refund as part of its return policy. *See* https://prevagen.com/policies/refund-policy (last visited February 9, 2026). At this juncture, however, "[p]ermitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice . . . would destroy the notice requirement's utility, and undermine the possibility of early settlement." *Cattie*, 504 F. Supp. 2d at 950. The Court should dismiss Plaintiff's CLRA claim as a matter of law. *See Pizana v. SanMedica Int'l LLC,* No. 1:18-cv-00644, 2019 WL 4747947, at *10 (E.D. Cal. Sept. 30, 2019) (dismissing CLRA claim where, despite the plaintiff amending the complaint 30 days after sending notice, "the original complaint includ[ed] an admittedly noncompliant CLRA claim").

## C.    Plaintiffs' Song-Beverly Act Warranty Claims Fail as a Matter of Law

Plaintiff's attempt to recover under warranty theories also falls short. Plaintiff alleges that Quincy breached express and implied warranties under the Song-Beverly Act.[5] (FAC ¶¶ 262, 275.) As a threshold matter, Plaintiff's warranty claims will necessarily fail because "the labels at issue do not contain any representations that would mislead a reasonable consumer." *Lee v. Nature's Path Food, Inc.*, No. 3:23-cv-00751, 2023 WL 7434963, at *4 (S.D. Cal. Nov. 9, 2023) (collecting cases). Thus, because Plaintiff failed to state a claim under the UCL, FAL, and CLRA as set forth above, she cannot plausibly allege duplicative warranty claims based on the same statements. (*See supra* Section I.A.)

---

[5]    Plaintiff does not raise any warranty claims under the UCC, so they are not directly addressed as part of this Motion. To the extent Plaintiff attempts to salvage her warranty claims by raising UCC theories, however, any such claim would lack merit as a matter of law because she failed to provide notice of the alleged breach "within a reasonable time after discovery of the breach." *Ryan v. Starco Brands, Inc.*, No. 5:24-cv-00642, 2024 WL 5102651, at *6 (N.D. Cal. Apr. 19, 2024). Here, Plaintiff admits that she last took Prevagen in August 2023, but did not file her original Complaint until October 13, 2025. (FAC ¶ 191.) Such an unreasonable period of time between discovery of the alleged defect and providing notice dooms any UCC warranty claims at the start. *See Ryan*, 2024 WL 5102651, at *6 (finding seven months to be "unreasonable").

12

Even if Plaintiff's other claims are permitted to survive, however, Plaintiff's Song-Beverly Act claims necessarily fail as a matter of law because the statute's right of action only applies to "buyer[s] of consumer goods." Cal. Civ. Code § 1794(a). "[C]onsumer goods," as used in the statute, "specifically excludes 'consumables' from its coverage." *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-cv-01828, 2014 WL 27527, at *14 (N.D. Cal. Jan. 2, 2014) (citing Cal. Civ. Code §§ 1791(a), 1792). California's Legislature reasoned that "it makes some sense to exempt such goods" from the act "due to the manner in which. . . consumables are handled." *Atkinson v. Elk Corp.*, 109 Cal. App. 4th 739, 754 (2003). As a result, district courts in this Circuit routinely dismiss Song-Beverly Act claims where the product at issue is a consumable. *See, e.g.*, *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 950, 965 (N.D. Cal. Mar. 25, 2013) (dismissing a Song–Beverly Act claim based on "misbranded food products"); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 904 (N.D. Cal. 2012) (same).

There is no reasonable doubt that Prevagen is a consumable. "Consumables are any product that is intended for 'consumption by individuals,' meaning items like food or medicine." *Hiradate v. Ralphs Grocery Co.*, No. 2:22-cv-03593, 2022 WL 19299128, at *5 (C.D. Cal. Nov. 28, 2022); *see also* Cal. Civ. Code § 1791(d) (defining consumables as "any product that is intended for consumption by individuals, or use by individuals for purposes of personal care or in the performance of services ordinarily rendered within the household, and that usually is consumed or expended in the course of consumption or use."). And here, Plaintiff concedes throughout the Amended Complaint that Prevagen is a dietary supplement intended for consumption. (*E.g.*, FAC ¶¶ 6–7.) As such, Plaintiff's warranty claims are necessarily foreclosed by the Song-Beverly Act itself. *Hernandez v. Johnson & Johnson Consumer Inc.*, No. 3:19-cv-15679, 2020 WL 2537633, at *6–7 (D.N.J. May 19, 2020) (dismissing warranty claims under the Song–Beverly Act premised on representations on Rapid Release Gel-caps).

**D.**     **Plaintiff's Derivative Unjust Enrichment Claim Should Be Dismissed**

Plaintiff's claim for unjust enrichment separately fails as a matter of law because California law does not provide a "standalone cause of action for 'unjust enrichment.'" *Astiana*

13

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

*v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1059 (C.D. Cal. 2014) ("Courts consistently have held that unjust enrichment is not a proper cause of action under California law."). Rather than providing a cause of action which must be proved, courts construe a claim for unjust enrichment as a "quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal. App. 4th 221, 231 (2014). But where a plaintiff's unjust enrichment claim is premised on "the same 'misleading representations' that she alleges as the basis for her other claims," and she fails to establish that the representations were misleading, any attempt at restitution "fails for the same reason that her other claims fail." *Garza*, 760 F. Supp. 3d at 1052. Here, because Plaintiff's labyrinthine Amended Complaint fails to state a claim under the UCL, FAL, or CLRA, she cannot seek relief under any unjust enrichment theory. (*See supra* Section I.A.)

And even if Plaintiff's statutory claims are permitted to survive, her attempt at obtaining broad equitable relief through the doctrine of restitution cannot. Because unjust enrichment is properly construed as seeking restitution, Plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). As such, even while a plaintiff may plead theories and relief in the alternative, "under *Sonner*, Plaintiffs must at a minimum allege they have no adequate remedy at law, even at the motion to dismiss stage." *Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 840 (E.D. Cal. 2024). Here, Plaintiff does not make even a passing attempt to do so. Because "the [Amended C]omplaint does not allege that Plaintiff lacks an adequate legal remedy," Plaintiff's unjust enrichment claim should be dismissed. *Swetala v. Quten Rsch. Inst., LLC*, No. 1:24-cv-00620, 2025 WL 950627, at *7 (E.D. Cal. Mar. 28, 2025) (Thurston, J.).

> **E.    Plaintiff's Shotgun-Pleading Fails to Plausibly Allege Wrongdoing By Any Particular Defendant**

The Amended Complaint also fails to state a claim because she fails to differentiate between and among the defendants. Where a plaintiff raises claims that must be plead with particularity, the "complaint cannot 'merely lump multiple defendants together' but rather must

14

Case No. 1:25-cv-01357-JLT-CDB

differentiate the[] allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421, 2020 WL 7040125, at *10 (C.D. Cal. Nov. 23, 2020) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)); *see also Zakikhan v. Hyundai Motor Co.*, No. 8:20-cv-01584, 2021 WL 4805454, at *7 (C.D. Cal. June 28, 2021) ("Even if group pleading were appropriate for claims under a notice pleading standard, group pleading is inappropriate for claims that must be pleaded with particularity.").

Here, despite naming four corporate entities and their President as defendants, the Amended Complaint failed to attribute specific misrepresentations or actions to any of them. Rather, Plaintiff tells a sensationalized version of Prevagen's history and thereafter refers to "Defendants" collectively. But this does nothing to "identify the role of [each] defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (cleaned up) (quoting *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir. 1989)). This pleading failure is particularly noteworthy given that the Amended Complaint attributes conduct to the corporate entities while alleging that Defendant Underwood merely had authority over them. Because Plaintiff alleged that "[D]efendants engage[d] in different wrongful conduct, [she] must likewise differentiate [her] allegations." *O'Brien v. HII Ins. Sols.,* No. 2:20-cv-02115, 2021 WL 1060398, at *5 (E.D. Cal. Mar. 19, 2021) (citation omitted). Thus, "as Plaintiff fails to offer alleged particularized wrongdoing attributable to *each* defendant, Plaintiff's [Amended] Complaint fails to satisfy the Rule 9(b) heightened pleading standard and must be dismissed." *Murrow v. Quincy Bioscience Holding Co., Inc.*, No. 1:23-cv-14893, 2025 WL 446149, at *3 (N.D. Ill. Feb. 10, 2025).

**II.     The Court Should Dismiss the Amended Complaint as Against Defendant Mark Underwood for Lack of Personal Jurisdiction**

In addition to the arguments set forth above, the Court should dismiss the claims against Underwood for an additional reason: the Court lacks personal jurisdiction over him. *See* Fed. R. Civ. P. 12(b)(2). California's long-arm statute allows for the exercise of personal jurisdiction to the extent permitted by the Due Process Clause of the Constitution. *Picot v. Weston*, 780 F.3d

15

1206, 1211 (9th Cir. 2015).  Accordingly, to establish personal jurisdiction, Plaintiff must allege facts sufficient to show that Underwood "ha[d] certain minimum contacts with [California] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here, however, Plaintiff's Amended Complaint fails to identify *any* contacts between Underwood and California, let alone contacts sufficient to satisfy Due Process.  Instead, all Plaintiff musters is that Underwood is the President of Quincy and that, as a result, he had control and authority over the nationwide advertising that happened to include California.  (*See* FAC ¶ 197.)  But as courts around the country have recognized—including two recent decisions dismissing Underwood in copy-cat actions specifically—a plaintiff cannot establish personal jurisdiction over an executive solely due to their corporate position.  And without being able to impute Quincy's contacts onto Underwood, nowhere does Plaintiff allege any California-specific activity or conduct on the part of Underwood occurring in or aimed toward California. Plaintiff's claims against Underwood should therefore be dismissed for lack of personal jurisdiction.

## A.    Underwood Is Not Subject to General Personal Jurisdiction

To start, Plaintiff cannot show that the Court has general jurisdiction over Underwood. For one, Plaintiff does not allege that Underwood is a citizen of California (he is not).  (*See* FAC ¶¶ 196–97.)  Nor does Plaintiff allege that Underwood "engage[s] in 'continuous and systematic general business contacts'" in California (he does not).  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).  Rather, Plaintiff concludes without alleging any supporting facts that Underwood "transacts or has transacted business in this district and throughout the United States, including California" and that he "formulated, directed, controlled, had the authority to control, or participated in [Quincy's] acts and practices."  (FAC ¶¶ 196–97.)  These allegations fail to establish *any* specific activity by Underwood in California—let alone continuous and systematic contacts.  As a result, general personal jurisdiction is improper.

16

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**B.    Underwood Is Not Subject to Specific Personal Jurisdiction**

Plaintiff's cursory allegations further fail to establish specific personal jurisdiction over Underwood.    For false advertising claims, the Court only has personal jurisdiction over Underwood if Plaintiff shows that he "purposefully direct[ed] his activities" toward the state and that the Amended Complaint "arises out of or relates to [Underwood's] forum-related activities." *Schwarzenegger,* 374 F.3d at 802.  But "[e]ach defendant's contacts with the forum State must be assessed individually," and "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also Ewing v. Encor Solar, LLC,* No. 3:18-cv-02247, 2019 WL 277386, at *5 (S.D. Cal. Jan. 22, 2019) ("[A] person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." (citation omitted)).  Plaintiff must establish "with sufficient specificity that [Underwood] was the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *Delman v. J. Crew Grp., Inc.*, No. 2:16-cv-09219, 2017 WL 3048657, at *4 (C.D. Cal. May 15, 2017).  She has not done that.

**1.    Plaintiff Failed to Allege That Underwood Purposefully Directed Any Activities at California**

Plaintiff cannot establish that Underwood ever took any action that targeted or was otherwise directed toward the state of California.  To show that his activity was purposefully directed toward California, Plaintiff must allege that Underwood "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805.  But Plaintiff's Amended Complaint is devoid of *any* specific activity occurring in California or that was aimed specifically at California, let alone allegations tying Underwood to the state.  At most, Plaintiff alleges that Underwood oversaw a nationwide advertising campaign that happened to "*includ[e]* California."  (FAC ¶¶ 83, 196 (emphasis added).)  "That is simply not enough to establish that [any defendant] 'expressly aimed' the challenged advertisements at California," let alone that

17

Underwood was personally involved in doing so. *Bradley v. T-Mobile US, Inc.*, No. 5:17-cv-07232, 2020 WL 1233924, at *15 (N.D. Cal. Mar. 13, 2020).

Nor can Plaintiff allege personal involvement of Underwood sufficient to establish jurisdiction. The Amended Complaint passively alleges Underwood's role with Quincy's advertising by describing the nationwide advertising and tacking on that Underwood must have "directed" or "approved" the company's conduct. (*See, e.g.*, FAC ¶¶ 4, 12–16, 22.) But that says nothing of his actual involvement, and "[s]imply alleging, without more, that [Underwood] is very involved with the business, and that California is an important market for the business, is not sufficient to make [him] subject to the Court's personal jurisdiction." *Delman*, 2017 WL 3048657, at *4. Indeed, courts in this Circuit routinely find that without specific allegations showing how the executive "was personally involved" in the specific conduct, the "[m]ere ownership or control of an entity, even if that entity was responsible for [conduct occurring] in California, is insufficient to demonstrate that [the officer] himself had such minimum contacts with" the state. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 997 (E.D. Cal. Aug. 15, 2012) (citation omitted); *see also Tangiers Inv., L.P. v. Americhip Intern., Inc.*, No. 3:11-cv-00339, 2011 WL 3299099, at *2 (S.D. Cal. Aug. 1, 2011) ("[S]imply being the CEO is not enough to establish that [a defendant] [is] the 'guiding spirit' behind the injurious activities."); *Green v. Hepta Run, Inc.,* No. 2:19-cv-10522, 2020 WL 1638273, at *3 (C.D. Cal. Apr. 2, 2020) (collecting authority and finding that an executive "creating" the corporation "and approving its business model are insufficient" to establish personal jurisdiction over him).

In fact, each court that considered a similar motion in a case that this action attempts to ride off of has agreed that Underwood's position as Quincy's President and control over the company's nationwide advertising are not enough to confer personal jurisdiction against him. The Southern District of New York, for instance, granted summary judgment to Underwood because, despite "Prevagen advertisements [being] disseminated nationwide," there was "no evidence to show that Mr. Underwood participated in developing advertising specifically for New York." *FTC v. Quincy Bioscience Holding Co., Inc.*, No. 1:17-cv-00124, 2022 WL

18

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

2440421, at *2 (S.D.N.Y. July 5, 2022). Even after the NYAG cited documents and testimony relating to Underwood's involvement with the advertising—as Plaintiff purports to do here through her attached trial testimony—the court found jurisdiction lacking:

> [A]lthough it is undisputed that Mr. Underwood is the President, co-founder, and board member of the company, that Prevagen advertisements have been disseminated to consumers in the State of New York through a variety of media, and that Mr. Underwood has a role in the creation, review, approval and placement of the advertisements, none of those facts create a material dispute as to whether Mr. Underwood is a "primary actor" in Quincy's marketing and advertising as it relates to the state of New York[.]

*Id.* (internal citation omitted). Plaintiff misleadingly relies on the jury's verdict in the FTC/NYAG Action, but she neglects to mention why "Underwood was not a defendant in the State of New York's lawsuit"—there was no personal jurisdiction over him. (FAC ¶ 199.) In fact, Underwood was later stricken from the jury verdict form for that very reason. (*See* Graham Decl. Ex. C.) Thus, far from establishing personal jurisdiction over Underwood, Plaintiff's misplaced reliance on the FTC/NYAG Action confirms that it does not exist.

And just last year, in a different case filed by Plaintiff's counsel, the Northern District of Illinois analyzed whether allegations that "Underwood was 'a member of the marketing creative team, serving as the final decision maker on advertising claims across all channels of distribution and media platforms'" were sufficient to confer personal jurisdiction over him and another executive at the pleading stage. *Murrow*, 2025 WL 446149, at *6. Even after taking the allegations as true, the court found that the allegations "fail[ed] to demonstrate that [Underwood] took any action directed at Illinois that formed the cause of action for Plaintiff's Complaint." *Id.* Specifically, the court reasoned:

> Plaintiff argues that because Defendant Underwood was a member of the marketing team and "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of [Corporate Defendants]," specific personal jurisdiction is met. Taken as true, this allegation does not demonstrate that Defendant Underwood was involved in the specific misrepresentation that was disseminated in Illinois. Nor does it lead to the conclusion that Plaintiff saw the specific misrepresentation that led her to purchase

Prevagen. Again, these broad allegations are insufficient for the Court to exercise specific personal jurisdiction over Defendant Underwood.

*Id.* (internal citation omitted).[6]

Plaintiff does not—and cannot—offer any allegations in the Amended the Complaint that would compel a different result.  Accordingly, the Court should dismiss Underwood for lack of personal jurisdiction.

**2.    Plaintiff Failed to Allege That Her Claim Arises Out of or Relates to Underwood's Alleged Forum-Related Activities**

Because Plaintiff does not allege any California-specific activity on the part of Underwood, it necessarily follows that her claim cannot arise from those non-existent activities. But even assuming that the Court finds that Underwood had some attenuated connection to California, any alleged activity is wholly disconnected to Plaintiff's claims.  To meet her burden under the second prong, Plaintiff must establish facts showing "a strong 'relationship among the defendant, the forum, and the litigation.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 353 (2021) (citing *Helicopteros,* 466 U.S. at 414).  Thus, without any connection between Underwood and Plaintiff's claims, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264 (2017).

Here, Plaintiff cannot show any relationship—strong or otherwise—between Underwood's actions and California or the litigation.  The gravamen of Plaintiff's Amended Complaint is that she was allegedly deceived by unspecified brain health representations on the labeling and television advertisements for Prevagen, but she only offers bare legal conclusions that Underwood "approved the sale" and "directed and caused the Quincy Corporate Defendants to purchase and arrange for the nationwide broadcast, including in California, television ads"

---

[6]    Following the court's dismissal without prejudice, the plaintiff in *Murrow* amended her complaint, offering substantially similar allegations to Plaintiff's Amended Complaint here. (*Compare* FAC, *with Murrow,* No. 1:23-cv-14893, Dkt. 72 (N.D. Ill. Feb. 27, 2025).)  The defendants' renewed motion to dismiss is currently pending before that court.

20

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

about Prevagen. (FAC ¶¶ 14–15.) Beyond these generalities, however, Plaintiff does not allege that Underwood had any purposeful and direct involvement in creating or disseminating *any* specific labels or statements upon which she allegedly relied. (*See id.* ¶ 191.) This further establishes that personal jurisdiction over Underwood would be improper.

### 3.    Exercising This Court's Jurisdiction Over Underwood Would Be Unreasonable

Because Plaintiff failed to allege that Underwood had sufficient minimum contacts in California, the Court "need not address . . . whether the exercise of jurisdiction would be reasonable." *Picot*, 780 F.3d at 1213 n.2. Even if the Court were to assume that Underwood had sufficient contacts with California, however, jurisdiction over him would be unreasonable and would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. While several factors are considered in determining if jurisdiction is reasonable, "the primary concern is the burden on the defendant." *Bristol-Myers*, 582 U.S. at 263; *see also FDIC v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987) ("[T]he law of personal jurisdiction is asymmetrical. The primary concern is for the defendant's burden." (citation omitted)).

Given the attenuated connection between Underwood and California—taking place through nationwide advertising that Plaintiff all-but admits did not target California specifically—allowing personal jurisdiction over Underwood in his personal capacity would be burdensome and unfair. *See Massie v. General Motors Co.*, No. 1:20-cv-01560, 2021 WL 2142728, at *6 (E.D. Cal. May 26, 2021) (Thurston, J.). Indeed, Plaintiff contends that she relied on television advertisements and Prevagen labels as displayed on Amazon. (FAC ¶ 191.) Thus, "[i]f [Underwood] can be haled into California merely on the basis of its [nationwide advertising] and sales [on Amazon], then, under [Plaintiff's] proposed rule, [he] can be haled into every state, and respectively, every online advertiser worldwide can be haled into California." *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018). Due Process should not and does not allow for such an absurd result; jurisdiction is improper.

21

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice.

Dated: February 9, 2026                    KELLEY DRYE & WARREN LLP

By: */s/ Glenn T. Graham*
      Geoffrey W. Castello (*pro hac vice* application forthcoming)
      Glenn T. Graham (SBN 338995)
      7 Giralda Farms, Suite 340
      Madison, NJ 07940
      Tel.: (973) 503-5900
      Fax: (973) 503-5950
      gcastello@kelleydrye.com
      ggraham@kelleydrye.com

      Jaclyn M. Metzinger (*pro hac vice* application forthcoming)
      Caitlin R. Hickey (*pro hac vice* application forthcoming)
      3 World Trade Center
      175 Greenwich Street
      New York, NY 10007
      Tel: (212) 808-7800
      Fax: (212) 808-7897
      jmetzinger@kelleydrye.com
      chickey@kelleydrye.com

      *Counsel for Defendants*

Case No. 1:25-cv-01357-JLT-CDB

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS